FILED BY _____ D.C.

NOV 1 9 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

15cv81590-Cohn/Seltzer

HYLAS YACHTS, INC., a foreign corporation,

     Plaintiff,

vs.

RICHARD STROTHER, T3 VISTAS, LLC, a
Nevada limited liability company, TROY TUCKERMAN
STROTHER, FLASHCAT VENTURES, LLC, an inactive foreign
Limited Liability Company, FIT IN YOUR JEANS BY
FRIDAY, LLC, an inactive foreign limited liability company, and
CREDITSMARTPRO, LLC, an inactive foreign limited liability company,
STROTHER FILM PARTNERS, LP, a Delaware limited partnership, and
STROTHER FILM PARTNERS II, L.P., a California limited partnership

     Defendants.

_____/

## PLAINTIFF'S POST JUDGMENT VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff HYLAS YACHTS, INC., a foreign corporation ("Judgment Creditor") brings an action for the domestication and collection of the unpaid judgment the judgment debtors, Richard Strother, an individual ("Debtor Individual") and T3 VISTAS, LLC, a Nevada limited liability company ("Debtor Corporation") (collectively "Judgment Debtors") and to enjoin any further transfer or dissipation of assets from the Judgment Debtors to any third parties to avoid the reach and application of the unpaid judgment received by the Judgment Creditor in the State of Massachusetts[1]. The third party transferees that the Judgment Creditor seeks to enjoin and for reach and application of the unpaid Massachusetts Judgement are as follows: TROY TUCKERMAN STROTHER ("Debtor's Son"); FLASHCAT VENTURES, LLC, an inactive

---

[1] hereinafter **"The Massachusetts Judgment"**

Case 9:15-cv-81590-JIC   Document 1   Entered on FLSD Docket 11/19/2015   Page 2 of 42

*Hylas Yachts vs. Strother, et.al.*
*Case No.:*

foreign limited liability company ("Flashcat Company"); FIT IN YOUR JEANS BY FRIDAY, LLC, an inactive foreign limited liability company ("Fit In Your Jeans Company"), CREDITSMARTPRO, LLC, an inactive foreign limited liability company ("Credit Smart Company"); STROTHER FILM PARTNERS, L.P, a Delaware limited partnership ("Strother Delaware Film Partnership"); STROTHER FILM PARTNERS II, a California limited partnership ("Strother California Film Partnership") (collectively "Third Party Transferees").

## INTRODUCTION, VENUE AND JURISDICTIONAL ALLEGATIONS AND GENERAL COMMON TO ALL CAUSES OF ACTION

1.      This is post judgment collection action on the Massachusetts Judgment against the Judgment Debtors and the Third Party Transferees for an amount that is in excess of Seventy Five Thousand Dollars ($75,000.00); exclusive of attorneys' fees, costs and expenses.  A copy of the Massachusetts Judgment is attached hereto as **EXHIBIT "A".**  This Court has subject matter jurisdiction as per 28 USC §1332.

2.      Judgment Creditor is a foreign corporation that is principally domiciled in the State of Massachusetts and is actively involved in interstate commerce through the selling of yachts throughout the country; including the Southern District of Florida.

3.      Debtor Individual is a disbarred attorney who is principally domiciled and doing business in the Southern District of Florida.

4.      Debtor Corporation is a foreign limited liability company that was created by the Debtor Individual for purposes of proceeding with the underlying contractual agreement with Judgement Creditor for the purchase and sale of a Yacht.  Debtor Corporation is the alter ego of Debtor Individual and is therefore doing business in the Southern District of Florida through such dealings.

5.     Debtor's Son is Debtor Individual's son.  Debtor's Son resides and is doing business in the State of Florida, Southern District of Florida, as a third party transferee of assets from Debtor Individual.  Debtor's Son is affiliated with Credit Smart Company.  Debtor's Son permits Debtor Individual to money and property that the Debtor's Son receives through entities that include Credit Smart Company at the convenience of the Judgment Individual in direct violation of the Massachusetts Judgment.

6.     Flashcat Company is an inactive foreign limited liability company that is doing business in the Southern District of Florida as its managing member is Debtor Individual.  Flashcat Company is a third party transferee of the Debtor Individual as the Debtor Individual uses Flashcat Corporation for the Debtor Individual's own convenience and to avoid the application and reach of the Massachusetts Judgment.

7.     Fit In Your Jeans Company is an inactive foreign limited liability company that is doing business in the Southern District of Florida as its managing member is Debtor Individual.  Upon information and belief, Fit In Your Jeans Company is a series of exercise DVD's with Kim Kardashian which currently sells at the very least on Amazon from $6.00 to $59.00.  It is a third party transferee of Debtor Individual as the Debtor Individual uses Fit In Your Jeans Company for the Debtor Individual's own convenience and to avoid the application and reach of the Massachusetts Judgment.

8.     Credit Smart Company is an inactive foreign limited liability company that is doing business in the Southern District of Florida as its managing member is Debtor Individual.  Debtor's Son further has an affiliation with Credit Smart Company.  Credit Smart Company is a third party transferee of the Debtor Individual as the Debtor Individual uses Credit Smart Company for Debtor

Case 9:15-cv-81590-JIC   Document 1   Entered on FLSD Docket 11/19/2015   Page 4 of 42

*Hylas Yachts vs. Strother, et.al.*
*Case No.:*

Individual's own convenience and to avoid the application and reach of the Massachusetts Judgment.

9.     Strother Delaware Film Partnership is a foreign, active, limited partnership that is controlled and operated by Debtor Individual and is being used for two purposes: to unjustly enrich the Debtor Individual and support his lavish lifestyle and to avoid the reach and application of the Massachusetts Judgment obtained by the Judgment Creditor.

10.     Strother California Film Partnership is a foreign, active limited partnership that his also controlled and operated by the Debtor Individual and is being used for two purposes: to unjustly enrich the Debtor Individual while simultaneously permitting the Debtor Individual to avoid the reach and application of the Massachusetts Judgment obtained by the Judgment Creditor.

11.     Venue properly lies in the Southern District of Florida because it is an action by the Judgment Creditor to collect on the Massachusetts Judgment against the Judgement Debtor and the third party transferees.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.     The Massachusetts Judgment was the result of extensive litigation regarding the purchase and sale of a Yacht.  It was entered on March 31, 2015.

13.     The litigation commenced with the Judgment Creditor initiating the Massachusetts Litigation in the State of Massachusetts (**"The Massachusetts Litigation"**) and, immediately thereafter, the Judgment Debtor initiated their own action for damages and injunctive relief regarding the purchase and sale of the Yacht in the Southern District of Florida (**"The Florida Litigation"**).  The Court in The Florida Litigation ruled that that the Judgment Creditor initiated the Massachusetts Litigation prior to the filing of The Florida Litigation and dismissed the Florida Litigation on those grounds.  The Massachusetts Litigation proceeded.

Case 9:15-cv-81590-JIC Document 1 Entered on FLSD Docket 11/19/2015 Page 5 of 42

*Hylas Yachts vs. Strother, et.al.*
*Case No.:*

14.    After losing the Florida Litigation, Judgment Debtor further attempted to stall the prosecution of The Massachusetts Litigation. Judgment Debtor did so by first filing a Chapter 7 bankruptcy action on behalf of the Debtor Corporation. Such action is referenced by Case No.: United States Bankruptcy Court; Southern District of Florida; West Palm Beach Division; Case No.: 14-11262 PGH (hereinafter **"The Chapter 7 Bankruptcy Litigation"**). Judgment Creditor received a relief from stay to permit it to continue with the prosecution of the Massachusetts Litigation. Ultimately, The Chapter 7 Bankruptcy Litigation was dismissed.

15.    Not to be outdone, Debtor Individual filed a Chapter 13 bankruptcy litigation. Such action is referenced as United States Bankruptcy Court, Southern District of Florida; West Palm Beach Division, Case No.: 14-16671 PGH (hereinafter **"The Chapter 13 Bankruptcy Litigation"**).

16.    Discovery continued in the Massachusetts Litigation. It commenced in the Chapter 7 Bankruptcy Litigation. Discovery in each matter resulted in the following evidence.

First, Debtor Individuals' bankruptcy schedules originally valued the Flashcat Company asset at One Hundred and Fifty Thousand Dollars ($150,000.00). The bankruptcy schedules valued the Debtor Individual's 27.4% ownership interest in Fit In Your Jeans By Friday corporate asset at Two Hundred and Fifty Thousand Dollars ($250,000.00). Other assets that were identified by the Debtor Individual in his bankruptcy schedules include the holder of securities in Micro Analytical Systems, Inc. and Impact Systems, Inc. (Math Mastery.com). An additional review of the Debtor Individual's schedules provides, in part, that Debtor Individual intentionally devalued his corporate assets in order to attempt to qualify for the Chapter 13 bankruptcy requirements set forth in the Bankruptcy Code. Of additional import is that neither Strother Delaware Film Partnership nor Strother California Film Partnership was listed by the Debtor

Case 9:15-cv-81590-JIC   Document 1   Entered on FLSD Docket 11/19/2015   Page 6 of 42

*Hylas Yachts vs. Strother, et.al.*
Case No.:

Individual in his bankruptcy schedules in The Chapter 13 Bankruptcy Litigation.

Second, during all such proceedings, Debtor Individual has been residing in certain residential property commonly described as 211 Seaspray Avenue, Palm Beach, Florida ("The Leased Premises"). The schedules provide that the Debtor Individual was paying $6000.00 per month to reside at the Debtor's Leased Premises. Additionally, a review of the Palm Beach County Property Appraiser Website values the Debtor's Leased Premises at $1,477,255.00 and is 3,622 total square feet.

Third, Debtor Corporation is a shell entity; organized by the Debtor Individual to enter into the purchase and sale transaction on the Yacht.

Fourth, Debtor Corporation is the alter ego of Debtor Individual. This is evidenced by the fact that the Debtor Individual controlled Debtor Corporation and then used the Debtor Corporation for the fraudulent purpose of filing a UCC-1 on the Yacht after breaching the contract through the failure to issue applicable payments for the purchase of the vessel. Debtor Individual did so because he believed he would be insulated from personal liability through having the corporate entity that he controlled and dominated engage in such fraudulent activity on his behalf.

Fifth, when Debtor Individual lost the Florida Litigation and knew that he, personally, could be held accountable for his actions in the Massachusetts Litigation, Debtor Individual attempted to avoid liability through the filing of the Chapter 13 Bankruptcy Litigation. When that didn't work, Debtor Individual further attempted to avoid liability and conceal his assets through the filing of the Chapter 13 Bankruptcy Litigation. Judgment Creditor noticed Judgment Debtor for a Rule 2004 debtor examination. Documents regarding the Judgment Debtor's interest in the Third Party Transferee corporate entities were listed in the *duces tecum* portion of the deposition notice. Debtor Individual attended the deposition. Debtor Individual was in possession

of the documents in response to the *duces tecum* portion of the deposition notice—including the Debtor Individual's interest in the Third Party Transferee corporate entities. Debtor Individual refused to produce the corresponding documents to the undersigned counsel, as counsel for Judgment Creditor. Judgment Creditor thereafter filed a motion for Rule 2005 order to compel the Judgment Debtor's attendance and full cooperation during his deposition. A hearing was conducted on this motion on September 3, 2014. The Court indicated during the hearing that it would sanction Judgment Debtor for what the Court described as '*game playing*'. Faced with the threat of sanctions for the failure to produce the corresponding documents and the bad faith bankruptcy filing, the Judgment Debtor voluntarily dismissed the Chapter 13 Bankruptcy Litigation. This is evidenced by the attached **EXHIBIT "B".** As a result, the Judgment Creditor did not receive the corresponding documents to substantiate the interests that the Judgment Debtor had in the Third Party Transferee corporate entities.

17.    The Massachusetts Litigation continued. It resulted in an order granting the Judgment Creditor's motion for preliminary injunctive relief. A copy of which is attached hereto as **EXHIBIT "C".** The order is dated March 6, 2014. It required the Debtor Individual to provide the Court with a full accounting of the Judgment Debtor's assets. It further required the Judgment Debtor to provide the Enjoined Assets to the Court under seal[2]. Judgment Creditor complied with the order and provided the assets to the Court under seal. The Massachusetts Litigation proceeded to trial. The Judgment Debtor chose not to be present; providing a slew of excuses for his absence.

18.    The Court found that the Debtor Individual slandered the Judgment Creditor by posting defamatory information regarding the Judgment Creditor through a website that Debtor Individual created during the prosecution of the underlying claims.

---

[2] See ¶5 of the attached EXHIBIT C.

Case 9:15-cv-81590-JIC   Document 1   Entered on FLSD Docket 11/19/2015   Page 8 of 42

*Hylas Yachts vs. Strother, et.al.*
*Case No.:*

19.     The Court entered a judgment for compensatory damages totaling Nine Hundred and Three Thousand Seven Hundred and Two Dollars and Fifty Cents ($903,702.50) for claims sounding in breach of contract and fraud against the Judgment Debtors[3]. A further review of the Massachusetts Judgment provides for the subcategorization of the compensatory damages[4] and the respective causes of action[5].

20.     In addition, the Court entered a finding that the Judgment Debtors conduct was willful and knowing in violation of the Massachusetts Deceptive Trade and Practices Act, or Mass Gen. L. c. 93A §2.  It therefore doubled the compensatory damages against Judgment Debtor; bringing the total compensatory damages to One Million Eight Hundred and Seven Thousand Four Hundred and Four Dollars ($1,807,404.00)[6].

21.     Finally, the Court entered prevailing party attorneys' fees, costs and expenses against the Judgment Debtors in the amount of Two Hundred and Twenty Eight Thousand Six Hundred and Fifty Nine Dollars and Forty Two Cents ($228,659.42).

22.     Taking the compensatory damages together with the prevailing party attorneys' fees, costs and expenses, the Court entered a final monetary damages in favor of the Judgment Creditor in the amount of Two Million Thirty Six Thousand Sixty Three Dollars and Forty Two Cents ($2,036,063.42) (hereinafter **"The Monetary Judgment"**).

23.     The Court further entered an order granting the Judgment Creditor's request for injunctive relief.  Specifically, the Massachusetts Judgment states as follows:

> ➤ **"[Debtor Individual], including his agents, successors, and/or assigns, is enjoined from transferring, encumbering, or hypothecating title to or any interest in his assets until this judgment is satisfied in full"**.

---

[3] See Page 6 of the Massachusetts Judgment.
[4] See Pages 6 and 7 of the Massachusetts Judgment.
[5] See Pages 8 through 10 of the Massachusetts Judgment.
[6] See Pages 12 of the Massachusetts Judgment.

Case 9:15-cv-81590-JIC   Document 1   Entered on FLSD Docket 11/19/2015   Page 9 of 42

*Hylas Yachts vs. Strother, et.al.*
*Case No.:*

> ➢ "Here, there is ample evidence that the defendant may dissipate or conceal assets here where he has attempted to thwart resolution of this case and has delayed compliance with orders regarding identification of his assets to the Defendants".

24.     Debtor Individual is residing in the Leased Premises. Debtor Individual is driving The Vehicle. Debtor Individual is using the bank accounts titled in the name of (i) Debtor's Son; (ii) Flashcat Company; (iii) Fit In Your Jeans Company; (iv) Credit Smart Company; (v) Strother Delaware Film Partnership; and (vi) Strother California Film Partnership is for his own convenience. It is being done in direct violation of the Massachusetts Judgment[7].

25.     All conditions precedent has been met or has otherwise been waived and/or satisfied.

## COUNT I—COMPLAINT FOR EX-PARTE TEMPORARY RESTRAINING ORDER AND FOR TEMPORARY AND/OR PERMANENT INJUNCTIVE RELIEF AGAINST DEBTOR INDIVIDUAL AND THIRD PARTY TRANSFEREES

26.     Judgment Creditor readopts and reincorporates the allegations contained in Paragraphs 1 through 25, inclusive, as if specifically incorporated herein.

27.     This is a cause of action sounding in a complaint for a temporary restraining order and for temporary and/or permanent injunctive relief against the Debtor and the Third Party Transferees.

28.     The Massachusetts Judgement provides that the Judgment Creditor is entitled to injunctive relief. Without the injunctive relief, the Judgment Debtors will continue to dissipate or conceal assets to thwart the ability of the Judgment Creditor to satisfy the judgment from the Massachusetts Litigation.

29.     The Massachusetts Judgment is *per se* evidence that the Judgment Creditor requires the imposition of a temporary restraining order and for temporary and/or injunctive relief against

---

[7] See Page 16 of EXHIBIT A.

Case 9:15-cv-81590-JIC   Document 1   Entered on FLSD Docket 11/19/2015   Page 10 of 42

*Hylas Yachts vs. Strother, et.al.*
*Case No.:*

Debtor Individual and the Third Party Transferees[8]. In addition, the fact that the Debtor Individual did not disclose on his bankruptcy schedules in the Chapter 7 Bankruptcy Litigation and/or the Chapter 13 Bankruptcy Litigation and then refused to proceed with his scheduled Rule 2004 debtor examination is further *per se* evidence that the Debtor Individual is engaged in a continuous and systematic conduct of hiding assets to avoid the reach and application of the Judgment Creditor and the uncollected Massachusetts Judgment.

30.     Judgment Creditor will suffer irreparable injury if the injunction is not issued as the failure to issue an injunction will permit Debtor Individual to continue to use the Third Party Transferees for his own convenience and, therefore, continue to violate the injunction issued by the Court as per the Massachusetts Judgment.

31.     The threatened injury outweighs the potential harm to Debtor Individual and the Third Party Transferees. If the Judgment Creditor is incorrect in the representation that the Third Party Transferees are not involving in the aiding and abetting of the ongoing attempts to thwart collection of the Massachusetts Litigation, then Judgment Debtor and the Third Party Transferees will have the protection of a security bond. If, however, the Judgment Creditor's representations are, in fact, correct, the consequence of failing to enter the order on an *ex-parte* basis will have the effect of allowing the Judgment Debtor and the Third Party Transferees to receive notice of the proceedings and dissipate additional assets to further thwart Judgment Creditor's collection efforts.

32.     The issuance of such injunction, if issued, would not be adverse to the public interest. The public has an interest in the belief that judgments will be satisfied and that judgment debtors, including the Debtor Individual, will not attempt to intentionally circumvent those efforts

---

[8] See Page 16 of the Massachusetts Judgment.

*Hylas Yachts vs. Strother, et.al.*
*Case No.:*

through parking assets in third party entities and/or family members to avoid honoring legal obligations.

33.     Without the requested issuance of the ex-parte injunction, the Debtor Individual will receive notice of the pending proceedings and will attempt to further conceal and dissipate assets to avoid the application and reach of the Judgment Creditor. Such request is also in accord with the Court's equitable powers of preventing persons from using companies and family members in order to avoid satisfying outstanding payment obligations.

34.     The threatened harm that the conduct will create is so imminent that notice and a hearing on the application for preliminary injunction is impractical if not impossible. *See., e.g., Hernandez vs. Board of Regents*, 1997 WL 391800 (M.D. Fla. 1997).

**WHEREFORE,** Judgment Creditor requests an order from the Court granting its Petition For Temporary Restraining Order and/or for Temporary or Permanent Injunctive Relief and further requests any further relief that the Court deems fair, just and equitable.

### COUNT II—REQUEST TO PIERCE THE CORPORATE VEIL AND TO REACH AND APPLY ASSETS OF THIRD PARTY TRANSFEREES TO THE MASSACHUSETTS JUDGMENT

35.     Judgment Creditor readopts and reincorporates the allegations contained in Paragraphs 1 through 25, inclusive, as if specifically incorporated herein.

36.     This is a cause of action sounding in a request to pierce the corporate veil of the Third Party Transferee corporate entities and to reach and apply the assets from the Third Party Transferee Corporate Entities and Debtor's Son to satisfy the Massachusetts Judgment.

37.     Judgment Debtor dominates or controls the Third Party Transferee corporate entities to such an extent that the Judgment Debtor is, in fact, the alter ego of the Third Party Transferee corporate entities and is therefore permitted to use the corporate entities for the

Case 9:15-cv-81590-JIC   Document 1   Entered on FLSD Docket 11/19/2015   Page 12 of 42

*Hylas Yachts vs. Strother, et.al.*
*Case No.:*

fraudulent and improper purpose of misleading the Judgment Creditor by creating the false and fraudulent appearance that the Judgment Debtor is without sufficient assets when, in fact, Judgment Debtor uses Debtor's son and his control and domination of the Third Party Transferee corporate entities to support his lavish, Palm Beach lifestyle of maintaining his residence in the Residential Property, enjoying the use of his Vehicle and otherwise paying for ordinary expenses through the use of the Third Party Corporate entities and the Debtor's son.

38.     As a direct and proximate result of this conduct, the Judgment Creditor has been damaged; measured by the Massachusetts Judgment and the continuing attorneys' fees, costs and expenses incurred in collecting and obtaining a satisfaction on the Massachusetts Judgment.

**WHEREFORE,** Judgment Creditor would respectfully request that the Court do the following:

a.   To take jurisdiction over this matter;

b.   To enter an order finding that the Third Party Corporate entities are the alter ego of the Judgment Debtor;

c.   To enter an order permitting the Judgment Creditor to reach and apply the assets from the Third Party Transferees in order to satisfy the Massachusetts Judgment; and

d.   To enter an order permitting the Judgment Creditor to reach and apply the assets from the Debtor's Son to satisfy the Massachusetts Judgment; and

e.   To enter any further relief that this Honorable Court deems fair, just, and equitable.

*Hylas Yachts vs. Strother, et.al.*
*Case No.:*

Dated on this 19th day of November, 2015.

Respectfully submitted,

THE   LAW   OFFICES   OF
GEOFFREY D. ITTLEMAN, P.A.
110 SE 6th Street, Suite 2300
Fort Lauderdale, Florida 33301
Tel: (954) 462-8340
Fax: (954) 462-8342
geoffrey@ittlemanlaw.com

By:     /s/ *Geoffrey Ittleman*
Geoffrey D. Ittleman, Esq.
Fla. Bar No.: 377790

*Hylas Yachts vs. Strother, et.al.*
*Case No.:*

## VERIFICATION PAGE

I, KYLE JACHNEY, as director of Hylas Yachts, Inc., a Massachusetts corporation, under penalties of perjury, declare that I have read the Verified Complaint and that the facts that are stated in it are true.

BY: _____

       KYLE JACHNEY, Director
       Hylas Yachts, Inc., a Massachusetts
       Corporation

14

Exhibit "A"

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **HYLAS YACHTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 12-10468-DJC** |
| | ) | |
| **T3 VISTAS, LLC and** | ) | |
| **RICHARD STROTHER,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**STATEMENT OF REASONS**

**CASPER, J.**                                                                           **March 31, 2015**

**Background**

Plaintiff Hylas Yachts, Inc. ("Hylas") brought this action against Defendants Richard Strother ("Strother") and T3 Vistas, LLC ("T3") asserting several claims arising out of the parties' agreement that T3 would purchase a custom built yacht designed for Strother. D. 68. Notwithstanding representations that Strother had sufficient assets to purchase the custom yacht and that T3, a limited liability company would purchase and take title, after construction of the yacht, T3 breached the agreement, and following the breach, Strother engaged in threatening conduct to disrupt the sale of the yacht to another buyer and interfere with Hylas's business. Id. ¶¶ 11-48.

The trial in this matter was initially scheduled for March 3, 2014. D. 81. At the final pretrial conference on February 27, 2014, the Court allowed counsel who had been representing both Defendants to withdraw as counsel representing Strother, but remain as counsel for T3. D.

1

130. Trial was rescheduled for April 14, 2014 in part to allow Strother to get new counsel. D. 141. Shortly before the April 14th trial date, on March 26, 2014, Strother filed a suggestion of bankruptcy. D. 160. Approximately three months later, upon notice that the bankruptcy court had dismissed the bankruptcy case, the Court reopened this matter on June 25, 2014, D. 170, and in July 2014, rescheduled the trial for August 13, 2014. D. 184.

On August 13, 2014, the date of the bench trial, neither Strother nor T3 appeared in court for trial. D. 191. On the eve of trial, Strother had attempted again to reinstate the bankruptcy proceeding, D. 186-87, but that court declined to reopen the matter. D. 189 at 1; D. 189-1-3. Although Strother, who resides in Florida was available by telephone on August 13th, he offered no good-faith basis why he was not present in Court for trial, particularly given the prior scheduling of this matter for trial and given that he made no motion to continue trial. T3 also failed to appear, D. 191. See Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 36 n. 2 (1st Cir. 2012) (providing that "limited liability companies, like corporations, cannot litigate pro se"). The Court noted the failure of the parties to appear, D. 191, and entered default against both in favor of Hylas. D. 193.

The Court did not enter default against Strother lightly. See Robson v. Hallenbeck, 81 F.3d 1, 2 (1st Cir. 1996) (noting that factors to consider where conduct warrants dismissal are "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions"); see also Companion Health Servs., Inc. v. Kurtz, 675 F.3d 75, 85 (1st Cir. 2012) (noting that "there was perhaps enough litigation misconduct by [the defendants] for a default sanction if the totality of their behavior during the entire history of the case had been considered, but remanding where default based on

2

single instance); <u>Global NAPs, Inc. v. Verizon New England Inc.</u>, 603 F.3d 71, 93 (1st Cir. 2010) (affirming default where parties had violated discovery orders and rules regarding same). The Court did so on the heels of his failure to appear for trial without good cause and in light of conduct since the beginning of this litigation to thwart the litigation process. Following the start of this litigation, Strother threatened Hylas with public expressions of the nature of Hylas's litigation, D. 87-1, including creating multiple websites such as www.hylaslitigation.org, hylaslawsuit.com, hylaslawsuit.info and hylaslawsuit.org where individuals, specifically "brokers, buyers, [and] owners" could express their opinions, about the "allegations, accusations, or legal points from Hylas" against Defendants, as customers. <u>Id.</u> at 2; <u>see id.</u> at 3. Strother also repeatedly indicated Hylas would be unable to collect a judgment against him, <u>id.</u> at 1 ("[i]f your wildest dreams brought fruit, and you were able to get some surplus judgment . . . it could not be collected against me"), and even that Hylas would be liable to Strother for "vexatious litigation." <u>Id.</u>  In these communications, Strother repeatedly referenced his experience as an attorney, including referring to himself "[a]s an experienced professional lawyer." <u>Id.</u> at 3; D. 87-2 at 3-4 (indicating that Strother's law license is suspended).  He also threatened Hylas and its manufacturer with bankrupting them:  "[a]s a legal professional, I coldly see the range of likely outcomes of litigation, one of which is the possible bankruptcy of Hylas and the loss of innocent jobs at Queen['s] Long [the yacht manufacturer]." D. 87-1 at 3; D. 136 ¶¶ 5-6 (affidavit from Hylas's counsel in Florida explaining Strother's indication that he would move for Rule 11 sanctions and subsequent notice of intent to file sanctions, yet never filing for sanctions).

Even putting such conduct aside, Strother, proceeding *pro se* following the withdrawal of his attorney in February 2014, D. 128, failed to comply timely with the Court's March 6, 2014 preliminary injunction mandating disclosure of his assets, D. 142, leading Hylas to move for

contempt. D. 153. The day before compliance was due, Strother notified Hylas he would move for an extension D. 154-1, which he did not do until March 24, 2014. D. 158. Even by that date, there is no indication that Strother had endeavored to comply fully with the March 6, 2014 Order. Compare D. 142 (requiring, among other things, that Strother "account to this Court and all other parties under oath" as to assets, file a detailed financial statement under oath, identify certain assets and notify all entities holding "Enjoined Assets" of the Order) with D. 158 and D. 158-1 (indicating that he has "substantially complied" with Order, but not indicating what, if any, efforts he made to identify certain assets or notify entities holding Enjoined Assets); D. 159; D. 159-1 (filing one-page, sworn financial statement with attachments, but not identifying any assets under paragraph 4 of the Order or any entities holding Enjoined Assets under Paragraph 5 of the Order); D. 160 (Strother files suggestion of bankruptcy on March 26, 2014 while Hylas's motion for contempt is still pending).

In the motion for contempt, Hylas noted Strother "repeatedly postponed this case by claiming that he cannot travel, claiming that he does not have the funds to travel, and putting T3 into bankruptcy." D. 154 at 3. In this filing, Hylas moved for an entry of default judgment. Id. at 4. Less than ten days after Hylas filed its motion for contempt, Strother filed a suggestion of bankruptcy, resulting in dismissal without prejudice. D. 162. A mere three months later, the Florida court dismissed the bankruptcy action, D. 168-1, when Strother failed to provide proof of his financial status and denied his motion to vacate the dismissal, outlining twelve separate failures in his petition, including but not limited to Strother's "failure to provide the Trustee with his tax returns" or provide the Trustee "with bank statements for 60 days prior to filing for bankruptcy relief," "fair market value for a Roth IRA, stocks" and other assets or proof of his monthly expenses. D. 168-3 at 2. With the bankruptcy court's dismissal of Strother's action,

Hylas filed a motion to vacate this Court's dismissal and for compliance with the March 6, 2014 preliminary injunction, D. 167, which the Court entered. D. 173. Hylas moved for further injunctive relief seeking an account for income and expenditures Strother made from March 24, 2014 forward, D. 177, and the Court granted the motion in part. D. 184, 216. Strother then attempted to reinstate bankruptcy proceedings before the rescheduled trial was scheduled to begin, indicating to this Court that an automatic stay would be in place. D. 186. In fact, the Florida court refused to reinstate the adversary proceeding against Hylas. D. 189-1. Shortly before trial, the Court indicated a stay would be in place as to Strother if the bankruptcy court proceedings were reinstated (which they were not) and invited a status update from the parties. D. 188. Strother failed to appear for trial or reasonably account for his failure to do so.

## Evidentiary Hearing on Default Judgment and Damages

Although the entry of default deemed the factual assertions of the complaint admitted, the Court convened an evidentiary hearing to determine the appropriate damage award and what, if any, default judgment would enter. D. 193; D. 193-1; see KPS & Assoc., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19-21 (1st Cir. 2003) (providing that an evidentiary hearing is appropriate following default when damages "are not capable of simple mathematical computation"). In connection with that hearing, the Court also considered whether Hylas should be awarded multiple damages pursuant to Mass. Gen. L. c. 93A's provision of double or treble damages for conduct that is "willful or knowing." Mass. Gen. L. c. 93A, § 11. Accordingly, the Court issues this Statement of Reasons in support of the Judgment it now enters.

## Damages

The Court held the evidentiary hearing on damages over the course of three days (January 29, 2015, February 3, 2015 and February 4, 2015, D. 211, 213-14), having considered the papers

submitted by the parties post-default, D. 195; D. 196; D. 198; D. 201; D. 204-207; D. 210; D. 215, as well as documents submitted by Strother on January 26, February 2 and February 4, 2015 to the Court and provided to counsel for Hylas. The Court also heard testimony from Hylas's Vice President, Kyle Jachney, and heard argument from counsel for Hylas and Strother, who participated by phone. D. 211, D. 213-14.

The claims before the Court at the time of trial (and the entry of default) included breach of contract as against T3 (Count I), breach of the covenant of good faith and fair dealing as against T3 (Count II), promissory estoppel as against both defendants (Count III), fraud as against both defendants (Count V), slander of title as against both defendants (Count VI), the Mass. Gen. L. c. 106 § 9-625 claim as against T3 (Count VII), intentional interference with an advantageous contractual relationship as against both defendants (Count VIII), civil conspiracy as against both defendants (Count IX), a Mass. Gen. L. c. 93A claim as against both defendants (Count X), a claim to pierce T3's corporate veil and hold Strother individually liable for all claims for which T3 was found liable (labeled Count XXIIIV) as well as claims for injunctive (Count XI) and declaratory relief (Count XII).[1]

After consideration of the evidence presented in conjunction with the hearing, the Court awards Hylas damages in the total compensatory damages amount of **$903,702.50** as to Strother and T3, jointly and severally. As to each subcategory of damages, the Court has cited to the relevant exhibits and/or testimony.

This total compensatory damages award includes:

1) The increased manufacturing charges, finance charges

---

[1]In February 2014, the Court granted summary judgment to Hylas on Strother's counterclaims and granted summary judgment to Hylas as to its Mass. Gen. L. c. 106 § 9-625 claim as against Strother, but not T3, reserving the question of damages for trial. D. 126.

and interest that Hylas had to pay to Queen's Long
(yacht's manufacturer) for failure to honor contract
(Exh. 36; 2/3/15 transcript at 46-47 [Jachney's testimony]):                    **$202,498.00**

2) Exchange rate costs payable to Queen's Long for failure
   to honor contract (Exh. 36, 37, 38,  2/3/15 transcript at
   24-40)                                                                        **$280,161.42**

3) Yacht Broker (Exh. 22, 36, 2/3/15 transcript at 5-7)
                                                                                **$ 72,520.00**

4) Dockage (Exh. 23, 36, 2/3/15 transcript at 43-44)                            **$ 62,081.00**

5) Mast Storage (Exh. 26, 36, 2/3/15 transcript at 44-46)                       **$  9,461.00**

6) Christian Schorr Labor (Exh. 28, 36, 2/3/15 transcript at 41-43)             **$ 19,080.00**

7) Insurance (Exh. 24, 36, 2/3/15 transcript at 22-24)                          **$ 21,840.00**

8) Cost to refurbish the yacht for resale
   (Exh. 26, 36, 2/3/15 transcript at 10-18)                                     **$160,004.00**

9) Travel costs/expenses related to sale to new prospects/buyers
   (Exh. 36, 2/3/15 transcript at 48-51)                                        **$ 21,000.00**

10) Payment of credit to buyer's attorney (Exh. 36, 2/3/15 transcript at 7-9)   **$ 30,000.00**

11) Credit to Strother following sale
    (Exh. 36, 2/3/15 transcript at 57-58)[2]                                     **($30,300.00)**

---

[2]This amount represents the difference between the balance due from the Defendants for the
yacht and the sale price to the new owner short of additional expenses.  2/3/15 transcript at 57-
58.

Case 1:12-cv-10468-DJC  Document 218  Filed 03/31/15  Page 8 of 17

12)    Damages related to Lien sought by Defendants

      (Exh. 36; D. 195-2; D. 195-3, 2/3/15 transcript at 51-57)

          $  7,470.82 (fees to Florida counsel)
          $35,719.10 (fees to Baker and Associates)
          $    500.00 (statutory damages under Mass. Gen. L. c. 106, § 9-625)
          $11,666.66 (interest on bond for preliminary injunction)
          $55,356.58

**TOTAL:**                                                           $903,702.00[3]

Accordingly, **$903,702.00** is the sum of compensatory damages as against Strother, individually as to Count III (Promissory Estoppel), Count V (Fraud) and Count X (c. 93A).[4] This figure includes the amount of $54,856.58 on Count VI (Slander of Title) and Count VIII (Interference with Advantageous Contractual Relations) and the amount of $55,356.58 (included in the total $903,702.00 award) on Count VII, Violation of G.L. c106 section 9-625.[5]

---

[3]While the proposed judgment filed by Hylas, D. 215, calculates this amount at $907,012.50, the Court notes that this does not reflect the decreased insurance charge from $25,150.00 to $21,840 represented at the evidentiary hearing.  2/3/15 Transcript at 23.  Thus, the Court adjusted the total amount accordingly.

[4]Although the Court entered default as to the Defendants as to all of the pending counts, including Count IX (civil conspiracy), the Court does not enter default judgment as to this claim. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (noting that even when a defendant defaults, before the court enters default judgment, it is "required to determine whether the . . . allegations establish [the defendant's] liability as a matter of law"); see also Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994) (discussing elements for civil conspiracy).

[5]For the common law counts of slander of title and interference with tortious interference with advantageous contractual relations, the award of damages is $500 less than the award under Mass. Gen. L. c. 106, § 9-625 because the statute, G.L. c. 106, § 9-625(e) awards additional statutory damages of $500 in addition to damages for noncompliance.  Id.  § 9-625(b).

The amount of **$903,702.00** is also the amount of compensatory damages as against T3

for Count I (Breach Of Contract),[6] Count II (Breach Of the Implied Covenant of Good Faith And

Fair Dealing), Count V (Fraud) and Count X (c. 93A).[7]  This amount includes $54,856.58 on

Count VI (Slander of Title) and Count VIII (Interference with Advantageous Contractual

---

[6]In light of this judgment on the breach of contract claim against T3, the Court does not enter judgment against T3 on Count III, the promissory estoppel claim.

[7]Although Strother contends that Hylas's claim does not give rise to a 93A claim because the transaction did not occur in a commercial context and the alleged conduct did occur in Massachusetts, the Court does not agree. As to a c. 93A claim, the complaint must allege a business relationship and unfair or unscrupulous conduct occurring primarily and substantially within Massachusetts. KPS, 318 F.3d at 23-25. The first prong concerns "a dual inquiry: first, the court assesses whether the interaction is 'commercial' in nature, and second, it evaluates whether the parties were both engaged in "trade or commerce," and therefore acting in a 'business context.'" Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 22-23 (1997). "[Chapter 93A, § 11] requires that there be a commercial transaction between a person engaged in trade or commerce [and] another person engaged in trade or commerce. Once it has been established that a commercial transaction exists, then [the court] address[es] whether the individuals were acting in a 'business context' and appl[ies] the test discussed in Begelfer v. Najarian, [381 Mass. 177, 190-91 (1980)]." Linkage Corp., 425 Mass. at 22-23; see KPS, 318 F.3d at 23 (providing "[t]he protections of Chapter 93A are not available to parties in a strictly private transaction, where the undertaking is not in the ordinary course of a trade or business") (internal quotation marks and citations omitted).

Here, Hylas alleges Strother and T3 were engaged in trade or commerce within the meaning of 93A, D. 68 ¶ 121, based on Strother's representation that "the yacht would be used for a commercial charter venture and that the yacht would have a crew and captain that would be hired for the purpose of commercial charter." Id. ¶ 15. As to whether the conduct occurred in Massachusetts, the Court looks to "(1) where the defendant engaged in unfair or unscrupulous conduct; (2) where the plaintiff was on the receiving end of the unfair or unscrupulous conduct; and (3) the situs of plaintiff's losses due to the unfair and unscrupulous conduct." KPS, 318 F.3d at 24 (quoting Roche v. Royal Bank of Can., 109 F.3d 820, 829 (1st Cir. 1997). The complaint alleges that the events and occurrences giving rise to the action occurred in Massachusetts, D. 68 ¶ 8, including that the Defendants filed two UCC financing statements in Massachusetts, id. ¶ 10. Furthermore, Hylas's principal place of business is in Massachusetts, indicating its damages would be in Massachusetts. Id. ¶ 1. Accepting these allegations as true as the Court does for the entry of default, KPS, 318 F.3d at 24, the allegations of the complaint give rise to liability.

Case 1:12-cv-10468-DJC   Document 218   Filed 03/31/15   Page 10 of 17

Relations) and the amount of $55,356.58 (included in the total $903,702.00 award) on Count VII, Violation of G.L. c106 section 9-625.[8]

### Multiple Damages under c. 93A

Mass Gen. L. c. 93A, § 2 prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." A plaintiff may recover double or treble damages when a defendant's "use or employment of the [unfair or deceptive] act or practice was a willful or knowing violation of said section two." Mass Gen. L. c. 93A, § 9(3). "[C]onduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1991) (quotations omitted). Based on the evidence presented in connection with the evidentiary hearing, with regard to the 93A claim, the Court finds that Hylas's complaint states a violation of Mass. Gen. L. c. 93A § 11, and furthermore that the conduct was "willful and knowing." The false and/or deceptive acts of Strother and T3 were intentional and willful.

---

[8]To the extent that Hylas seeks to pierce the corporate veil to hold Strother liable for claims against T3, Count XIII, the Court, by entry of default, see Kraft Power Corp. v. Merrill, 464 Mass. 145, 148 (2013) (internal quotations omitted); Zimmerman v. Puccio, 613 F.3d 60, 74 (1st Cir. 2010); see also Lipsitt v. Plaud, 466 Mass. 240, 252-54 (2013), allows such here. The complaint alleges that Strother represented that he would create T3 for the purchase of the yacht and for the transfer of title. D. 68 ¶ 13. The complaint further alleges that, at all times, Strother was the real party in interest, id. ¶ 14, that he would "either invest his own requisite funds into T3 or pay Hylas directly for the purchase of the yacht," id. ¶ 16, and further that after purchase of the yacht Strother would place title into " a limited liability company that otherwise had no assets or resources other than what would be funded into it directly or paid directly to Hylas for the purchase of the Yacht." Id. ¶ 17. Strother signed the sale agreement on behalf of T3. Id. ¶ 20. Moreover, the complaint alleges that T3 failed to adhere to any type of corporate governance, that the Defendants have failed to recognize the independent nature of T3 as a separate entity, that the Defendants intermingled assets, have failed to maintain the necessary independence to provide a legitimate third party existence for courts to recognize it as truly independent, have failed to file tax returns, have not held meetings or elected officers, have failed to capitalize T3 and paid for obligations out of Strother's own personal resources. Id. ¶ 147-57. Accordingly, these allegations give rise to piercing the corporate veil and Strother is jointly and severally liable for the judgment against him and T3 in this matter.

The record, further developed at the evidentiary hearing, shows that Strother misrepresented his ability and willingness to finance the yacht purchase and after T3 failed to honor the contract for purchase of the yacht, both Defendants acted to interfere with the sale of the yacht to another buyer (including the filing of unfounded UCC filings), which was Hylas's reasonable attempt to mitigate its damages. Strother also endeavored to affect Hylas's business interactions with other customers in regard to his creation of a website and blog that purported to chronicle the parties' litigation, but which made certain allegations about Hylas's business practices. D. 195 at 14 and Exh. F. The timing of such postings occurred during the fall when, as Strother was aware, Hylas and other yacht sellers convene at boat shows and conduct the bulk of its business for the year, D. 195 at 15, and at a minimum, can be fairly characterized as pressuring Hylas to drop or settle its claims against the Defendants.

"[W]hile there is considerable debate about whether litigation tactics alone can rise to the level of a Chapter 93A violation, there is little doubt that a course of conduct beginning before litigation and continuing unabated, thereafter may do so." Trenwick Am. Reinsurance Corp. v. IRC, Inc., 764 F. Supp. 2d 274, 305 (D. Mass. 2011) (finding bad faith in part because "when the litigation started, the defendants did everything they could to obfuscate the issues and stall their ultimate resolution"); see Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 43 n. 5 (1st Cir. 2000) (affirming finding of unfair trade practice and award of double damages against insurance company, when insurance company refused to provide coverage when insured could not produce a copy of its insurance certificate, insured brought lawsuit, and insurance company "engaged in a pattern of evasiveness and obstructionism" for over two years before suit which continued through trial, including a "deliberate avoidance strategy by raising a series of constantly shifting defenses and objections to payment"). Here, Defendants' conduct post-

11

litigation is not the only conduct that gives rise to its c. 93A liability or to a finding of willful and intentional conduct regarding same, but reflects a course of conduct that began before Hylas filed this lawsuit and continued through the duration of same. Accordingly, the Court concludes that the imposition of multiple damages is warranted. Mass. Gen. L. c. 93A, § 11; see AngioDynamics, Inc. v. Biolitec AG, No. 14-1603, 2015 WL 1055519, at *5 (1st Cir. Mar. 11, 2015) (noting that the "district court could, in its discretion, award treble damages under chapter 93A where Defendants' liability was established by default and the district court was well-acquainted with the egregiousness of Defendants' conduct"). Accordingly, the Court doubles the compensatory damages for a total of **$1,807,404.00** as to Strother and T3.

### Attorney's Fees and Costs

Here, Hylas seeks $219,059.42, D. 196-1, based upon invoices for legal work and expenses incurred from March 6, 2012 through September 4, 2014, D. 196-2 through D. 196-9, plus an additional $9,600 in attorney's fees for work performed following that filing, D. 210, for a total of $228,659.42, D. 215 at 3. For the award of attorney's fees and costs, Hylas relies upon Mass. Gen. L. c. 93A. D. 196 at 1; see Columbia Chiropractic Grp., Inc. v. Trust Ins. Co., 430 Mass. 60, 63 (1999) (providing, "[i]f a violation of G.L. c. 93A, § 11, forces another to incur attorney's fees, those fees are a loss of money or property and may be recovered as G.L. c. 93A damages"). As a prevailing party as to Mass. Gen. Laws c. 93A, § 2, Hylas is entitled to "reasonable attorney's fees." Mass. Gen. Laws c. 93A, § 11. The fees may be calculated "by the so-called 'lodestar' method, which focuses initially on fair market rate for the time reasonably spent in prosecuting the case." Ross v. Cont'l Res., Inc., 73 Mass. App. Ct. 497, 515 (2009) (quoting Killeen v. Westban Hotel Venture, LP, 69 Mass. App. Ct. 784, 790 (2007)). The trial judge must consider factors bearing upon the reasonableness of the scope of the legal work, but

is "not required to review and allow or disallow each individual item in the bill, but [can] consider the bill as a whole." Berman v. Linnane, 434 Mass. 301, 303 (2001). First, the judge considers the reasonableness of the time expended and then the hourly rate, which should be an average rate of cost for similar work performed by similarly experienced attorneys in the community. Shirokov v. Dulap, Grubb & Weaver PLLC, No. 10-cv-12043-GAO, 2014 WL 1271557, at *2 (D. Mass. Mar. 27, 2014) (quoting Stowe v. Bologna, 417 Mass. 199, 203-04 (1994) abrogated on other grounds by Fabre v. Walton, 441 Mass. 9 (2004)).[9] Although Hylas's claims against the Defendants were intertwined, the Court concludes that where, as here, "a single chain of events gives rise to both [ ] common law [claims] and a Chapter 93A claim, apportionment of legal effort between the [various] claims is not necessary." Industrial Gen. Corp. v. Sequia Pac. Sys. Corp., 849 F. Supp. 820, 826 (D. Mass. 1994). Accordingly, the Court considers the award of attorney's fees on this basis.

In this case, Hylas's counsel has filed a petition for attorney's fees, along with affidavits and billing records for the Court's review. D. 196; D. 196-1 (and exhibits); D. 210. Upon review, the Court concludes that the rate for Attorney Baker of $400/hour and for Attorney Groulx at $175/hour are reasonable and commensurate with legal marketplace rates and the attorneys' respective, professional training and experience. D. 196 at 12-14 (noting the attorneys' respective backgrounds and noting that Attorney Baker's rate of $400/hour is below his standard billable rate of $450/hour); D. 196-1 at 8-9 (citing Smith et al. v. Jenkins et al., 07-cv-12067-RGS (D. Mass. October 11, 2011), D. 196-10), 10; D. 196-1 at 9 (noting that Attorney

---

[9]The Court has awarded attorney's fees relating to the Florida litigation as part of the damage for Count VII, the Mass. Gen. L. c. 106, § 9-625 count, Mass. Gen. L. c. 106 § 9-625(b) (providing, "a person is liable for damages in the amount of any loss caused by a failure to comply with this article"), but that amount has not been double-counted here. See D. 196 at n. 4.

Groulx's standard rate is usually $225/hour). Although the underlying transaction between the parties, the sale of a yacht, was straightforward, the ensuing dispute and scope of litigation has not been. The litigation has spanned three years, D. 1, involved several motions for injunctive relief that the Court granted, D. 5, D. 35, D. 85, D. 141, 171, 177, 216, Hylas's motion for contempt regarding Strother's failure to comply with the latter of the injunctive orders, D. 153, motion to transfer to the S.D. Florida, D. 41, D. 57, discovery that including depositions of the parties, a deposition of Strother in his home state of Florida, and third parties, D. 196 at 13; D. 196-1 at 4, attempted mediation, D. 77, multiple pretrial conferences, D. 81, D. 131, opening and closing of this matter in the wake of bankruptcy proceedings, D. 112, 114, 160, 162, 164, 170, 186, 188, 189, related litigation in bankruptcy court in Florida, see id., a motion for summary judgment, D. 92, 126, preparation for trial rescheduled for August 13, 2014 (even if the Defendants did not appear on the day of trial), D. 191; D. 196 at 16, and a multiple-day evidentiary hearing on default judgment and damages, D. 211, 213-14. Hylas's prosecution of its claims against the Defendants also involved defensive litigation in the matter brought by Defendants in the Southern District of Florida, Richard T. Strother and T-3 Vistas LLC v. Richard Jachney, Kyle Jachney and Hylas Yachts, Inc., 12-cv-80283 (dismissed) and two related matters in bankruptcy court there, In re T-3 Vistas LLC, 14-11262-PGH and In re Richard Strother, 14-166671-PGH (both dismissed). D. 196 at 14-15.

With this background, and having reviewed the itemized bills for legal work (which does not, include charges for administrative duties, D. 196-1 at 4), the Court concludes that the amount of time and scope of work billed is reasonable. The billing records span counsel's representation of Hylas in this matter and the entries appropriately reflect legal research, drafting of pleadings, motions and oppositions, conduct of discovery, conferences with their client and

14

Case 1:12-cv-10468-DJC   Document 218   Filed 03/31/15   Page 15 of 17

correspondence with opposing counsel (when the Defendants were represented in this matter) and preparation for trial and preparation for and participation in motion hearings and other court conferences. The Court also finds that the expenditures billed as part of these legal bills, which were part and parcel of the legal work conducted by counsel, were also reasonably necessary. Accordingly, the Court awards Hylas's **$228,659.42** in attorney's fees and costs.

Although the Court has declined to allow Hylas's motion to amend the complaint over three years into this litigation and less than two months before the trial scheduled for last August, D. 176,[10] the Court did consider Hylas's argument in that filing that the Court "in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." Hall v. Cole, 412 U.S. 1, 5 (1973); D. 176 at 1 (citing Hall). The First Circuit, however, has noted that "[w]hatever the parameters of the 'bad faith' exception [to the American rule regarding non-recovery of attorney's fees in the absence of statutory provision], fees should be awarded under its authority only in extraordinary circumstances and for dominating reasons of justice." Cordeco Dev. Corp. v. Santiago Vasquez, 539 F.2d 256, 263 (1st Cir. 1976) (citation omitted); Marrero v. Brin, No. 2008-cv-92, 2014 WL 128309, at *3 (D.V.I. January 14, 2014) (noting that "'[b]ad faith requires a showing that a party litigated in 'bad faith, vexatiously, or for oppressive reasons'") (quoting Mobil Oil Corp. v. Indep. Oil Workers Union, 679 F.2d 299, 305 (3d Cir. 1982)). Moreover, given the award of attorney's fees under c. 93A, as discussed above, the Court declines to award attorney's fees on this basis.

---

[10]Although Fed. R. Civ. P. 15 allows for a liberal policy for amendments to pleadings, Fed. R. Civ. P. 15(a)(2) (providing, "[t]he court should freely give leave when justice so requires"), undue delay and prejudice to a defendants are considerations, as "protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (citation omitted). Here, the motion to amend came after three years of litigation. For these reasons, the Court denied the motion to amend to add an abuse of process claim, D. 176. D. 217.

## Injunctive Relief

In the amended complaint, Hylas sought preliminary and permanent injunctive relief, including but not limited to enjoining the Defendants from "threatening interfering or otherwise impeding the ability of Hylas to sell the yacht to the new buyer." D. 68 ¶¶ 135-39. The Court had earlier granted a preliminary injunctive relief restraining the Defendants from dissipating assets, enjoining Strother from transferring his assets and requiring an accounting of assets or the posting of a $1,300,000.00 bond. D. 142; D. 171; D. 184. Hylas now seeks this similar permanent injunctive relief. Given the record in this case, as summarized above, Hylas's success in obtaining judgment, the likelihood of irreparable harm to Hylas of any interference with the yacht at issue or dissipation of Strother's assets, the balance of harms that weighs in favor of Hylas if such relief is not granted where it will not be able to collect this judgment and the public interest in ensuring that the judgment is fulfilled expediently, the Court orders as follows: 1) Strother and T-3 are enjoined from in any way interfering, arresting, liening, taking possession, or in any way interfering with the quiet enjoyment and use of Hull no. 7, which was the yacht in question in this cause of action, owned by or title to which is held by any third party; and 2) Strother, including his agents, successors, and/or assigns, is enjoined from transferring, encumbering, or hypothecating title to or any interest in his assets until this judgment is satisfied in full. Maharaj v. Sommer, 451 Mass. 615, 622 (2008) (affirming judgment on receivership when defendants caused not only "extreme delay in payment of the judgment, but the conduct resulted in significant portions of the receivership estate being paid to cover the costs of years of litigation, in numerous courts, reducing the amount available to satisfy the judgment." Here, there is ample evidence that the defendant may dissipate or conceal assets here where he has attempted to thwart resolution of this case and has delayed compliance with orders regarding

identification of his assets to the Defendants.  See Micro Signal Research, Inc. v. Otus, 417 F.3d

28, 31 (1st Cir. 2005) (affirming grant of preliminary injunction and noting relief is warranted

when "there is a strong indication that the defendant may dissipate or conceal assets").

    **So Ordered.**

/s/ Denise J. Casper
United States District Judge

# Exhibit "B"

Case 9:15-cv-81590-JIC   Document 1   Entered on FLSB Docket 11/19/2015   Page 34 of 42

CGFD45 (7/23/13)



**ORDERED in the Southern District of Florida on September 23, 2014**

Paul G. Hyman, Jr.
Chief United States Bankruptcy Judge

---

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

Case Number: 14−16671−PGH
Chapter: 13

**In re:** *(Debtor(s) name(s) used by the debtor(s) in the last 8 years, including married, maiden, and trade)*

Richard Tuckerman Strother
340 Royal Poinciana Way #317−203
Palm Beach, FL 33480

SSN: xxx−xx−5677

## ORDER GRANTING EX PARTE MOTION TO DISMISS CASE

This matter is before the court on the ex parte Motion to Dismiss Case filed by the debtor. The court having reviewed this matter and being fully advised in the premises. It is

**ORDERED** that:

1. The motion to dismiss is granted and this case is dismissed with prejudice as to the filing of any bankruptcy case in any federal bankruptcy court in the United States of America by the above−named debtor for 180 days from entry of this order, or the expiration of any prejudice period set in any previous order, whichever is later.

*Page 1 of 2*

2. All pending motions are denied as moot.

3. The trustee shall file a final report prior to the administrative closing of the case.

4. (If applicable) the debtor shall immediately pay to the Clerk, U.S. Court, Flagler Waterview Building, 1515 N Flagler Dr, Rm 801, West Palm Beach FL 33401, **$0.00** for the balance of the filing fee as required by Local Rule 1017−2(E). Any funds remaining with the trustee shall be applied to this balance and the trustee must dispose of any funds in accordance with the Bankruptcy Code and Local Rule 1017−2(F), unless otherwise ordered by the court. The court will not entertain a motion for reconsideration of this order unless all unpaid fees are paid at the time the motion is filed.

5. A motion to rehear, reconsider, or reinstate a dismissed case must be filed in accordance with the requirements of Local Rule 9013−1(E).

6. In accordance with Local Rule 1002−1(B)(1), the clerk of court is directed to refuse to accept for filing any future voluntary petitions submitted by this debtor if the refiling violates a prior order of the court or if the petition is accompanied by an Application to Pay Filing Fee in Installments and filing fees remain due from any previous case filed by the debtor.

The clerk shall serve a copy of this order on all parties of record.

# # #

*Page 2 of 2*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HYLAS YACHTS, INC.,

Plaintiff,

v.

T3 VISTAS, LLC and RICHARD STROTHER,

Defendants.

Docket Number

1:12-cv-10468-DJC

## **ORDER**

For the reasons stated on the record at the March 6, 2014 hearing, and in compliance with Fed. R. Civ. P. 65, it is ORDERED and ADJUDGED that:

1.     The Defendant, Richard Strother ("Strother") (including his agents, successors, and assigns), is enjoined from transferring, encumbering, or hypothecating title to or any interest in his assets (including without limitation assets in the name of any entity Strother controls, such as Strother Film Partners, Strother Film Partners II, Strother Film Partners III, and Flashcat Ventures, LLC) until he complies with paragraphs 2, 3, 4, and 5.

2.     Strother must, within ten (10) days of this Order, account to this Court and all other parties under oath for all ownership interests, income, expenditures, transfers, encumbrances, or other dispositions of his assets from June 2011 to the present, including without limitation copies of statements of Strother's Morgan Stanley accounts during that time period. Such filing should be made under seal.

3.     Strother must, within ten (10) days of this Order, file a detailed financial statement under oath accurately listing all of his current assets (including without

1

limitation ownership interests in any legal entities or beneficial interests in any legal entities), liabilities, monthly expenses (including without limitation rent, transportation, medical expenses, health and other insurance), and his ownership interests in his assets, including without limitation the current balances of his Morgan Stanley accounts and a description of all assets held for his benefit or on his behalf by any entity. Such filing should be made under seal.

4. Strother must, within ten (10) days of this Order, identify to the Court and all other parties assets with a value of at least one million three hundred thousand dollars and zero cents ($1,300,000.00) that will be covered by this Order ("the Enjoined Assets"), including the name of the account in which they are held, the name of the institution where they are held, the account numbers, and other relevant identifying information, and the name of any representatives with whom Strother communicates about the accounts. Such filing should be made under seal.

5. Strother must, within ten (10) days of this Order, notify in writing by certified mail, return receipt requested, all entities holding the Enjoined Assets of the existence of this order. He must then file a copy of those writings with the Court and all other parties and affirm under oath that he has complied with this paragraph. Such filing should be made under seal.

6. Mr. Strother may spend $100,000 for his reasonable and necessary living, medical, and legal expenses until he identifies the Enjoined Assets to the Court within ten (10) days of this Order as required in paragraphs 2, 3, 4, and 5. If circumstances arise necessitating the payment of additional living, medical, and legal expenses, Mr. Strother may promptly petition the Court to increase this figure.

2

7.  When Strother has identified the Enjoined Assets to the Court, his remaining assets will no longer be subject to paragraph 1.

8.  Strother must file with the Court and all other parties the signed certified mail receipts evidencing that the entities holding Enjoined Assets are on notice of this Order immediately upon receipt.

9.  Strother and any entities holding Enjoined Assets (including their agents, successors, assigns) are enjoined, pending further order of this Court, from transferring any title to or interest in the Enjoined Assets without further order of this Court.

10.  If Strother posts with this Court a bond with sureties in the amount of at least one million three hundred thousand dollars and zero cents ($1,300,000.00), that action will satisfy all requirements of this Order, and Strother and any entities holding Enjoined Assets will be excused from the foregoing paragraphs.

11.  Pursuant to Fed. R. Civ. P. 65(c), Hylas is required to post a bond in the amount of $5,000.

12.  This order shall be effective upon posting the bond by Hylas.

SO ORDERED.

_Denise J. Casper_
District Court Judge

Dated: March 6, 2014

# Exhibit "C"

Case 1:12-cv-10468-DJC   Document 142   Filed 03/06/14   Page 1 of 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HYLAS YACHTS, INC.,

Plaintiff,

v.

T3 VISTAS, LLC and RICHARD STROTHER,

Defendants.

Docket Number

1:12-cv-10468-DJC

## ORDER

For the reasons stated on the record at the March 6, 2014 hearing, and in compliance with Fed. R. Civ. P. 65, it is ORDERED and ADJUDGED that:

1.     The Defendant, Richard Strother ("Strother") (including his agents, successors, and assigns), is enjoined from transferring, encumbering, or hypothecating title to or any interest in his assets (including without limitation assets in the name of any entity Strother controls, such as Strother Film Partners, Strother Film Partners II, Strother Film Partners III, and Flashcat Ventures, LLC) until he complies with paragraphs 2, 3, 4, and 5.

2.     Strother must, within ten (10) days of this Order, account to this Court and all other parties under oath for all ownership interests, income, expenditures, transfers, encumbrances, or other dispositions of his assets from June 2011 to the present, including without limitation copies of statements of Strother's Morgan Stanley accounts during that time period. Such filing should be made under seal.

3.     Strother must, within ten (10) days of this Order, file a detailed financial statement under oath accurately listing all of his current assets (including without

1

limitation ownership interests in any legal entities or beneficial interests in any legal entities), liabilities, monthly expenses (including without limitation rent, transportation, medical expenses, health and other insurance), and his ownership interests in his assets, including without limitation the current balances of his Morgan Stanley accounts and a description of all assets held for his benefit or on his behalf by any entity. Such filing should be made under seal.

4.    Strother must, within ten (10) days of this Order, identify to the Court and all other parties assets with a value of at least one million three hundred thousand dollars and zero cents ($1,300,000.00) that will be covered by this Order ("the Enjoined Assets"), including the name of the account in which they are held, the name of the institution where they are held, the account numbers, and other relevant identifying information, and the name of any representatives with whom Strother communicates about the accounts. Such filing should be made under seal.

5.    Strother must, within ten (10) days of this Order, notify in writing by certified mail, return receipt requested, all entities holding the Enjoined Assets of the existence of this order. He must then file a copy of those writings with the Court and all other parties and affirm under oath that he has complied with this paragraph. Such filing should be made under seal.

6.    Mr. Strother may spend $100,000 for his reasonable and necessary living, medical, and legal expenses until he identifies the Enjoined Assets to the Court within ten (10) days of this Order as required in paragraphs 2, 3, 4, and 5. If circumstances arise necessitating the payment of additional living, medical, and legal expenses, Mr. Strother may promptly petition the Court to increase this figure.

Case 1:12-cv-10468-DJC  Document 142  Filed 03/06/14  Page 3 of 3

7.      When Strother has identified the Enjoined Assets to the Court, his remaining assets will no longer be subject to paragraph 1.

8.      Strother must file with the Court and all other parties the signed certified mail receipts evidencing that the entities holding Enjoined Assets are on notice of this Order immediately upon receipt.

9.      Strother and any entities holding Enjoined Assets (including their agents, successors, assigns) are enjoined, pending further order of this Court, from transferring any title to or interest in the Enjoined Assets without further order of this Court.

10.     If Strother posts with this Court a bond with sureties in the amount of at least one million three hundred thousand dollars and zero cents ($1,300,000.00), that action will satisfy all requirements of this Order, and Strother and any entities holding Enjoined Assets will be excused from the foregoing paragraphs.

11.     Pursuant to Fed. R. Civ. P. 65(c), Hylas is required to post a bond in the amount of $5,000.

12.     This order shall be effective upon posting the bond by Hylas.

SO ORDERED.

_Denise J. Casper_
District Court Judge

Dated: March 6, 2014